UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

ORRIN SPENCER,

                        Plaintiff,        Case # 19-CV-6247-FPG

v.                                                    DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
───────────────────────────────

## INTRODUCTION

On December 18, 2015, Plaintiff Orrin Spencer protectively applied for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under Titles II and XVI of the Social Security Act alleging disability beginning on September 25, 2012. Tr.[1] 62. Plaintiff later amended his disability onset date to October 15, 2015. Tr. 12. The Social Security Administration ("SSA") denied his claim (Tr. 70-77), and on February 8, 2018, Plaintiff testified at a hearing before Administrative Law Judge Jo Ann L. Draper ("the ALJ"). Tr. 33-61. On June 8, 2018, the ALJ issued an unfavorable decision. Tr. 12-24. Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Plaintiff then appealed to this Court.[2] ECF No. 1.

The parties both filed motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"). ECF Nos. 13, 17.[3] For the reasons that follow, Plaintiff's

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 10.

[2] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

[3] Plaintiff filed a "Memorandum/Brief" which the Court treats as a motion under Rule 12(c). ECF No. 13.

1

motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further administrative proceedings.

## LEGAL STANDARD

To determine whether a claimant is disabled within the meaning of the Social Security Act—and therefore whether he is entitled to benefits—an ALJ follows a five-step sequential evaluation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him to perform the requirements of his past relevant work; and (5) whether the claimant's RFC permits him to perform alternative substantial gainful work which exists in the national economy in light of his age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation and citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. *See* 42 U.S.C. § 1383(c)(3) (citing 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation and citations omitted).

## DISCUSSION

### I. The ALJ's Decision

After finding Plaintiff had not engaged in substantial gainful work activity, the ALJ found that Plaintiff's polyarthritis, degenerative disc disease of the lumbar spine, depressive disorder, generalized anxiety disorder, and schizoid personality disorder were severe impairments. Tr. 14. None of Plaintiff's impairments met or equaled the Listings criteria. Tr. 15-16.

Plaintiff only takes issue with the mental exertional limitations imposed in the RFC. *See* ECF No. 13 at 19-23. To that end, the ALJ found Plaintiff capable of light work but limited him to "tasks learned in 30 days or less involving simple work related decisions requiring little to no judgment with only occasional work place changes," "no interaction with the public," and "occasional interaction with coworkers and supervisors." Tr. 17. The ALJ further found that Plaintiff "is unable to work in close proximity to others, such as not standing next to or being involved in tasks being done by others" and "is unable to work at a production rate pace." *Id.*

In formulating the mental limitations portion of the RFC, the ALJ gave "some weight" to a "report that [Plaintiff's] current doctor would not find disability for his present medication [sic] condition." Tr. 21. Even though the report was "vague" because it did not "indicate which doctor claimant spoke to," it was still given more weight than the opinion of Plaintiff's treating psychiatrist W. Joseph Touchstone, M.D. *Id.* Dr. Touchstone's opinion was given "little weight" because the ALJ found it inconsistent with both Dr. Touchstone's contemporaneous treatment notes and with Plaintiff's positive response to treatment and self-reports of capably living alone with little assistance. *Id.*

Plaintiff was found incapable of his past relevant work as a machinist. Tr. 22. To determine whether he could perform any other jobs in the national economy, the ALJ considered that Plaintiff was 49 years old at the time of disability onset, defining him as an individual closely approaching advanced age. *Id.* Although finding placement in the higher age category would have resulted in a finding of disability, the ALJ determined based on Plaintiff's high school education and skilled past relevant work that use of the higher age category was not appropriate. *Id.* Plaintiff was found capable of jobs such as garment sorter and retail marker. Tr. 23. Accordingly, the ALJ determined that Plaintiff was not disabled. *Id.*

## II.   Analysis

Plaintiff advances three arguments why the ALJ's decision is not supported by substantial evidence: (1) the treatment of Dr. Touchstone's opinion violated the treating physician rule and, consequently, required further development of the record; (2) Plaintiff's borderline age category was improperly analyzed; and (3) Plaintiff's disability determination was improperly adjudicated through the date of the ALJ's decision. The Court agrees with Plaintiff's first argument and therefore does not reach the others.

The treating physician rule is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *DeRoman v. Barnhart*, No. 03-CV-0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003). Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion regarding the "nature and severity" of the claimant's impairments when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2). The rule affords deference to treating physicians because they are "most able to provide a detailed, longitudinal picture of

[the claimant's] medical impairment(s)" and bring "a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." *Id.*

The treating physician rule applies with even greater force where, as here, the claimant suffers from mental impairments: "[b]ecause mental disabilities are difficult to diagnose without subjective, in-person examination, the treating physician rule is particularly important in the context of mental health." *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 342 (E.D.N.Y. 2010) (quotation and citation omitted).

That is not to say an ALJ may never discount the opinion of a treating physician. *See* 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). The Act, however, identifies factors that the ALJ must consider in determining how much weight to give to a discounted opinion. *Id.* Those factors include the length, nature, and extent of the treatment relationship, the frequency of examination, the evidence in support of the treating physician's opinion, the consistency of the opinion with the record as a whole, and whether the opinion is from a specialist. 20 C.F.R. § 416.927(c)(2)(i)-(ii), (c)(3)-(6). Further, in addressing those factors, the ALJ must "comprehensively set forth [her] reasons for the weight assigned." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion."). Irrespective of the weight assigned to a treating physician's opinion, the ALJ must not substitute her "own assessment of the relative merits of the objective evidence and subjective complaints for that of a treating physician." *Garcia v. Barnhart*, No. 07-CV-534, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003).

5

Here, the ALJ did not give good reasons for affording "little weight" to Dr. Touchstone's opinion. Plaintiff was referred to Dr. Touchstone when his physician could not find a physical basis for Plaintiff's complaints of pain. Tr. 447. Plaintiff treated with Dr. Touchstone from September 2016 to December 2017 and was diagnosed with generalized anxiety disorder, schizoid personality disorder, and undifferentiated somatoform disorder. Tr. 447-482, 613-642. Dr. Touchstone's notes detail improvement over the treatment period in that Plaintiff became somewhat more comfortable and less hypervigilant in sessions. *See, e.g.*, Tr. 449, 479-480. For example, whereas earlier in his sessions with Dr. Touchstone Plaintiff needed to be accompanied by his therapist, volunteered little information, and was reclusive and socially uncomfortable, Tr. 447, by his last documented session his medications were helping and he was "doing reasonably well" but "continue[d] to be quite fearful and avoidant." Tr. 637.

Plaintiff initially rated his anxiety an eight out of ten and his depression a six out of ten. Tr. 452. While Plaintiff had days where these ratings were down, by his last documented session with Dr. Touchstone his anxiety was still an eight out of ten and his depression was a five out of ten. Tr. 642. Despite Dr. Touchstone's observations that Plaintiff's medications were helping and his attention to activities of daily living appeared "good," Tr. 453, 455, 459, 461, 471, 619, Dr. Touchstone observed that Plaintiff was consistently anxious and depressed, exhibited poor anxiety tolerance and minimal insight, and remained "quite symptomatic," "quite fearful and avoidant," and was "anxious all the time" from the time he gets up until he goes to bed at night. Tr. 456-57, 463, 465, 471, 475, 481, 617, 623, 641. Plaintiff's prognosis remained "guarded" throughout his treatment. Tr. 457, 463, 481, 623, 641.

In a March 28, 2017 mental RFC questionnaire, Dr. Touchstone opined that Plaintiff had no useful ability to get along with co-workers without unduly distracting them or deal with normal

6

work stress. Tr. 402. Plaintiff was not able to meet competitive work standards in maintaining attention for two-hour segments, maintaining regular attendance within customary tolerances, working in coordination with or proximity to others without being unduly distracted, or completing a normal workday without interruptions from psychologically based symptoms. *Id.* Plaintiff was also seriously limited, but not precluded from, sustaining an ordinary routine without special supervision and in accepting instructions and responding appropriately to criticism from supervisors. *Id.*

During Dr. Touchstone's treatment, Plaintiff's therapist, Madeline Decker-Gutierrez, LMSW, had Plaintiff committed to St. Joseph's Hospital Behavioral Sciences Unit for suicidal ideation. Tr. 543-563. Though his suicidal ideation later dissipated, during a July 2017 session with LMSW Decker-Gutierrez, Plaintiff appeared anxious, his speech was slow, and he had a formal plan to commit suicide by using an air compressor intended to inject meat to create an air bubble that would travel straight to his heart. Tr. 543, 576, 580, 603, 608, 609. Plaintiff was admitted for inpatient treatment at St. Joseph's for two days. Tr. 542-45, 560.

Dr. Touchstone's treatment notes and opinion were remarkably consistent with the other record evidence of Plaintiff's psychological conditions. LMSW Decker-Gutierrez's notes spanning from March 2016 to November 2017 repeatedly documented Plaintiff's anxiety which made it "extremely difficult" for Plaintiff to do his work, take care of things at home, or get along with other people. Tr. 411, 429, 435, 439, 596, 600, 603, 606. Even while Plaintiff self-reported that his anxiety decreased with medication, Tr. 43, 415, 420, 440, LMSW Decker-Gutierrez continually observed that he appeared anxious during their sessions, was preoccupied with his finances, and did not trust others. 429, 431, 432, 435, 436, 438, 443, 445, 578, 596, 598, 606, 608.

7

For example, Plaintiff testified "I just don't like to be seen really in public. I'll go out at nighttime and get my mail and things like that and take my garbage out because nobody's watching me" and felt that people were "laughing at [him]." Tr. 44-45, 46. Activities that helped manage, but not eradicate, Plaintiff's anxiety included painting his kitchen the same color three different times, watching TV, and caring for his animals. 44-45, 47, 436, 438, 441, 576. Despite these being the very tasks that help control Plaintiff's psychological conditions, the ALJ found that "[t]he ability to engage in and complete these tasks is inconsistent with disabling physical or psychological impairment." Tr. 20.

The ALJ's rejection of Dr. Touchstone's synthesis and analysis of his own records because Plaintiff "report[ed] he can live alone with little assistance" and because the ALJ read into the notes a "positive response to treatment," Tr. 21, ignores the considerable record evidence in support of Dr. Touchstone's opinion and its consistency with the record as a whole, contrary to the requirements of 20 C.F.R. § 416.927(c)(2)(i)-(ii), (c)(3)-(6). This was not harmless error. Properly weighed, Dr. Touchstone's opinion may have resulted in more restrictive mental limitations, possibly precluding work. For example, Dr. Touchstone found Plaintiff had no useful ability to get along with co-workers without unduly distracting them. Tr. 402. The ALJ defined an inability to work within close proximity of others as "not standing next to or not being involved in tasks being performed by others," Tr. 57, but still found Plaintiff capable of occasional interaction with co-workers and supervisors. Tr. 17. However, if defined as "not within sight or sound of other individuals," more in line with Dr. Touchstone's opinion, the vocational expert testified that Plaintiff would not be able to perform any work in the national economy. Tr. 58.

Certainly, it was error to give more weight to a "vague" statement that Plaintiff's "doctor would not find 'disability' for his present medication [sic] condition" than to Dr. Touchstone's

8

opinion. Tr. 21. This statement is from a single line in a July 20, 2016 treatment note from LMSW Decker-Gutierrez. Tr. 430. The sentence reads in full: "However, he did emphasized [sic] that his doctor would not give him disability for his present medical condition." Determination of disability is an ultimate issue reserved for the Commissioner. *Geraw v. Comm'r of Soc. Sec.*, No. 2:11-CV-32, 2011 WL 6415475, at *5 (D. Vt. Dec. 21, 2011) (remanding for improper rejection of treating psychiatrist and counselor's opinions, noting rule that "[r]eserv[es] the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability, but it does not exempt administrative decision-makers from their obligation . . . to explain why a treating physician's opinions are not being credited." (quoting *Snell v. Apfel*, 177 F.3d 128, 133-34 (2d Cir. 1999)). Accordingly, it is unclear how much, if any, value should be placed on this unattributed disclosure, but it is undoubtedly far less probative of Plaintiff's mental RFC than the opinion of his treating psychiatrist whom he saw consistently for more than a year.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 17) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 20, 2020
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court